## AMERICAN BANK & TRUST CO. et al. v. COPPARD.*

### In re JONES MILLINERY CO.

(Circuit Court of Appeals, Fifth Circuit. November 12, 1915.)

### No. 2749.

BANKRUPTCY ⊙⇒164—VOIDABLE PREFERENCE—CHECKS GIVEN BANK IN PAY-
MENT OF NOTES.

Payments of notes to a bank in good faith by a mercantile company, within four months prior to its bankruptcy and when insolvent, by checks drawn on its ordinary deposit account kept in such bank in the usual course of business, do not constitute voidable preferences, recoverable by its trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 267; Dec. Dig. ⊙⇒164.]

In Error to the District Court of the United States for the Western District of Texas; Wm. B. Sheppard, Judge.

Action at law by M. Coppard, trustee in bankruptcy of the Jones Millinery Company, against the American Bank & Trust Company and the West Texas Bank & Trust Company. Judgment for plaintiff, and defendants bring error. Reversed.

Templeton, Brooks, Napier & Ogden and Walter P. Napier, all of San Antonio, Tex., for plaintiffs in error.

James D. Crenshaw, of San Antonio, Tex., for defendant in error.

Before PARDEE and WALKER, Circuit Judges, and SPEER, District Judge.

SPEER, District Judge. The American Bank & Trust Company and the West Texas Bank & Trust Company, consolidated, had for a customer and depositor the Jones Millinery Company, of San Antonio, Tex. Their transactions were those usual in such mutual relations. The Jones Millinery Company made deposits almost daily, and drew checks against its account. The bank was careful to make inquiry as to the general conduct of the Jones Millinery Company, and according to the uncontradicted evidence believed Mr. Jones, who controlled it, "to be a conservative and straight business man." Occasionally the Jones Millinery Company gave notes to the bank, on which payments were made from time to time by checks drawn against its regular account. There were always sufficient funds on deposit to pay such checks, and there had been no unusual deposits made for the purpose of meeting them. The payments thus made, which were sought to be recovered by the trustee, were as follows: November 18, 1914, $500; December 13, 1914, $502.25; and January 6, 1914, $1,-

---

013.34. These payments were to be applied on its past-due indebtedness to the bank. A proceeding in bankruptcy having been filed on January 20, 1914, these transactions were assailed by the trustee as voidable preferences. On the trial counsel for the bank requested the court to direct a verdict in its favor. This was declined, and error assigned thereon. The case was submitted to the jury, and a verdict returned in favor of the trustee for the amount of the last payment, namely, $1,013.34. The relating language of the presiding judge follows:

"The bank could credit its account with the funds of the bankrupt on deposit, and could accept the draft of the bankrupt upon the bank against that deposit for an antecedent indebtedness; but in doing so it must be without knowledge of the condition of the bankrupt at the time it honored the draft, or without any intention, or without any purpose or cause to believe at the time that such credit would result in a preference over other creditors of the same class."

The District Judge continues:

"If you believe from a preponderance of the evidence in this case that at the time these payments were made the Jones Millinery Company was insolvent, and that at the time the drafts were paid by the bank, or the funds withdrawn from the deposits, the American Bank & Trust Company had reason to believe that a preference would result, it makes no difference what the intention of the Jones Millinery Company was, but the intention on the part of the bank receiving them, having reason to believe that a preference would be created, then the trustee would be entitled to recover, and the verdict would be for the amount of whatever debt was paid, if the bank had reason to believe that a preference would result."

The question presented is of great importance to the business of banking, upon which the prosperity of the country so largely depends. It is true that if an insolvent, within four months antecedent to bankruptcy, should make deposits or give checks to a bank to enable it to secure a preference, the transaction would be inimical to the bankruptcy law, and would be held void as a preference. But when an insolvent customer makes a deposit with his bank, in good faith and in the usual course of business, at any time within four months before the petition in bankruptcy is filed against him, the bank is allowed to credit the amount on notes of the bankrupt held by it. New York County National Bank v. Massey, 192 U. S. 138, 24 Sup. Ct. 199, 48 L. Ed. 380. There the referee and the District Court approved such a credit, and, while it was discredited by the Circuit Court of Appeals, it was, on appeal, approved by the Supreme Court of the United States, Mr. Justice Day rendering the opinion. In the case at bar, at the time of bankruptcy, there was a balance on deposit of $193, which, as in the Massey Case, was allowed the bank by the bankruptcy court and without objection.

A case more clearly in point, however, is that of Studley v. Boylston National Bank, 229 U. S. 527, 33 Sup. Ct. 806, 57 L. Ed. 1313. There the court restricted its attention to the bank's right of set-off, under sections 68a and 68b of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 565 [Comp. St. 1913, § 9652]), which provides:

"Set-Offs and Counterclaims.—a. In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be

stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.

"b. A set-off or counterclaim shall not be allowed in favor of any debtor of the bankrupt which (1) is not provable against the estate; or (2) was purchased by or transferred to him after the filing of the petition, or within four months before such filing, with a view to such use and with knowledge or notice that such bankrupt was insolvent, or had committed an act of bankruptcy."

This controlling precedent is additionally important because there the set-off was made by checks drawn by the bankrupt against his account in the bank, and credited on past-due indebtedness, as in the case at bar. Said the Supreme Court (page 528 of 229 U. S., page 808 of 33 Sup. Ct., 57 L. Ed. 1313), Mr. Justice Lamar pronouncing the opinion:

"That section did not create the right of set-off, but recognized its existence and provided a method by which it would be enforced even after bankruptcy. What the old books called a right of stoppage—what business men call set-off—is a right given or recognized by the commercial law of each of the states, and is protected by the Bankruptcy Act, if the petition is filed before the parties have themselves given checks, charged notes, made book entries, or stated an account whereby the smaller obligation is applied on the larger. The banker's lien on deposits, the right of retention and set-off of mutual debts, are frequently spoken of as though they were synonymous, while in strictness a set-off is a counterclaim which the defendant may interpose by way of cross-action against the plaintiff. But, broadly speaking, it represents the right which one party has against another to use his claim in full or partial satisfaction of what he owes to the other. That right is constantly exercised by business men in making book entries whereby one mutual debt is applied against another. If the parties have not voluntarily made the entries, and suit is brought by one against the other, the defendant, to avoid a circuity of action, may interpose his mutual claim by way of defense, and if it exceeds that of the plaintiff may recover for the difference. Such counterclaims can be asserted as a defense or by the voluntary act of the parties, because it is grounded on the absurdity of making A. pay B. when B. owes A. If this set-off of mutual debts has been lawfully made by the parties before the petition is filed, there is no necessity of the trustee doing so. If it has not been done by the parties, then, under command of the statute, it must be done by the trustee. But there is nothing in section 68a which prevents the parties from voluntarily doing, before the petition is filed, what the law itself requires to be done after proceedings in bankruptcy are instituted."

We deem this conclusion of the Supreme Court salutary as sound. An honest man of business, though embarrassed and possibly insolvent, may not be deprived of the great aid of legitimate banking. Though in deep water, one is not forbidden to swim to safety if he can. Since there is nothing in the record betraying any evidence of fraud, or evasion of the Bankruptcy Law, on the part of the bankrupt or the bank, we must hold that the latter was entitled to the instruction it sought, and it follows that the judgment of the learned District Judge must be reversed.