## In re FAIRBURN·OIL & FERTILIZER CO.

### (District Court, N. D. Georgia. March 27, 1917.)

### No. 5366.

1. BANKRUPTCY ⟐164—PREFERENCES—WHAT CONSTITUTE.

Where an insolvent corporation, which was subsequently adjudicated a bankrupt, made deposits in a bank to which it was indebted on notes just a few days before bankruptcy, it being understood that the amount of the deposit was to be applied on notes, such deposit is preferential, the bank before applying it on the notes receiving checks from the corporation, for in such case, as the purpose of the deposit was to discharge the notes, the bank could not, as in ordinary cases, set off the amount thereof against indebtedness due it.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 267.]

2. CORPORATIONS ⟐545(6)—PREFERENCES TO OFFICERS.

Where notes of an insolvent corporation were indorsed by persons who were either directors of the creditor bank or of the bankrupt company, and in some instances both were satisfied pro tanto by the application of deposits made by the insolvent company only a few days before bankruptcy, such payments cannot be upheld on the ground that a bank has the right to apply a balance to a customer's credit against his indebtedness; Park's Ann. Civ. Code Ga. § 2222, declaring that directors primarily represent the corporation, and when it becomes insolvent they are bound to manage the remaining assets for the benefit of creditors, and cannot use their power to obtain a preference or advantage to themselves.

[Ed. Note.—For· other cases, see Corporations, Cent. Dig. § 2172.]

In Bankruptcy. In the matter of the bankruptcy of the Fairburn Oil & Fertilizer Company. On intervention by the Fairburn Banking Company. Report of referee striking the claim of the intervener from the files, but allowing it to retain a preferential payment, on payment of the difference between the dividends it would have received and the payment, confirmed.

J. H. Longino, of Fairburn, Ga., for claimant.
J. S. James and J. R. Bedgood, both of Atlanta, Ga., for trustee.

NEWMAN, District Judge. The report·of the referee on this branch of the Fairburn Oil & Fertilizer Company litigation is as follows:

"In the above-stated matter the Fairburn Banking Company filed three certain proofs of claim against said Oil & Fertilizer Company, amounting in the aggregate to $18,935.09. The trustee filed objections to said proofs, and prays an order disallowing the same on the ground that within four months of the 20th of June, 1916, when the involuntary petition to have said Oil & Fertilizer Company adjudged bankrupt was filed, the said Banking Company had been paid by said Oil & Fertilizer Company $5,174. On said petition said Oil & Fertilizer Company was adjudged bankrupt July 10, 1916, and that at the time of said payment the Oil & Fertilizer Company was insolvent, and that the said Banking Company knew said Oil Company was insolvent, and also knew that said payment would work a preference for said Banking Company. I find from the evidence that said Oil Company at the time of

said payment was insolvent, and that the said Banking Company knew of said insolvency, and that said payment would work a preference in its favor.

"The Banking Company insists that the law gave it the right to credit said sums of money on the indebtedness of said Oil Company, and that it had notified said Oil Company that the bank would not allow the Oil Company to draw out said money. After said notice it appears that the Oil Company drew its checks, one for $1,335.56, dated May 24, 1916, one for $3,575, dated June 16, 1916, and one for $263.50, dated June 17, 1916, on said Banking Company, and the amount thereof was credited on notes due said Banking Company. I find that when said Banking Company failed to credit said deposit on the notes due and held by it on said Oil Company, and write off said deposit without the consent of the Oil Company, but took checks from said Oil Company and applied same as credit upon said notes, that the law construes that as a voluntary payment on the part of the Oil Company, and therefore had the effect to take the transaction from under said principle of law allowing the Banking Company to credit said deposit upon said notes and write the deposit off without the aid or consent of the said Oil & Fertilizer Company. I find said payments contrary to law, being within four months from the filing of said involuntary petition, and said Oil & Fertilizer Company being insolvent, and the Banking Company knowing that it would work a preference.

"It is therefore ordered that said proof be disallowed and stricken from the files, unless said Banking Company shall, within 10 days, pay into the hands of the trustee the sum of $5,174, the amount paid said Banking Company by said checks. In the event said Banking Company pays to said trustee said sum of money, to wit, $5,174, then said Banking Company shall have the right and privilege to increase the sum of its claim by the exact sum, to wit, $5,174, so refunded as aforesaid, or to prove an additional claim for said sum of $5,174.

"Ordered, further, that said Banking Company have 10 days from this date in which to petition for review.

"Dated January 9, 1917."

On January 12, 1917, the referee amended his report as follows:

"The foregoing order and judgment is so far modified and amended as to allow the Fairburn Banking Company to hold said sum of $5,174 and account for same as dividends are paid. Said Banking Company is hereby required to pay to the trustee only the difference between said $5,174 and the amount of the dividends to be paid said Banking Company out of the amount of said bankrupt estate."

[1] The definite question in the case is whether or not the Banking Company should be allowed to retain the $5,174 as an offset and credit upon its claim against the bankrupt company, on the ground that the money deposited in its bank was so situated as that it should have been allowed as a set-off prior to the bankruptcy. It appears from the report of the referee and by the evidence that the amount named was drawn from the bank by checks and credited on notes of the bankrupt company, indorsed by certain individuals. The checks were drawn as follows: $1,335.56, May 24, 1916; $3,575, June 16, 1916; and June 17, 1916, $263.50.

While I do not know that the statement of the referee that this was paid by voluntary checks would, of itself, be sufficient to justify the recovery of the amount named as a preference, by the trustee, under the decision in Studley v. Boylston National Bank, 229 U. S. 523, 33 Sup. Ct. 806, 57 L. Ed. 1313, still I am satisfied that, under the facts

of this case, the manner in which this money was accumulated in the bank, and the way in which it was paid over to it by the officers of the bankrupt company, such payment constituted a preference.    In the case of Studley v. Boylston National Bank, supra, it is true that the money was taken by the bank without reasonable cause to believe that a preference would result; still it was very clearly held that the payment by checks would not, of itself, be sufficient to prevent the right of set-off given to banks as against bankrupts by section 68 of the Bankrupt Act (Act July 1, 1898, c. 541, 30 Stat. 565 [Comp. St. 1913, § 9652]).  Yet all of the additional facts here satisfy me that it was clearly a preference created by money received by the bank from the bankrupt company when the officers of the bank had every reason to know that a preference would result; that is, that the Banking Company would get more on its general claim against the bankrupt than other creditors of the same class.

In the case of American Bank & Trust Co. v. Coppard, 227 Fed. 597, 142 C. C. A. 229, the decision was by the Circuit Court of Appeals for this circuit, and is important here for that reason.    While the set-off was allowed in that case, part of the language of the court, in the decision, is as follows:

"The question presented is of great importance to the business of banking, upon which the prosperity of the country so largely depends.  It is true that if an insolvent, within four months antecedent to bankruptcy, should make deposits or give checks to a bank to enable it to secure a preference, the transaction would be inimical to the bankruptcy law, and would be held void as a preference.  But when an insolvent customer makes a deposit with his bank, in good faith and in the usual course of business, at any time within four months before the petition in bankruptcy is filed against him, the bank is allowed to credit the amount on notes of the bankrupt held by it."

Now, in the testimony in this case it seems perfectly clear from the evidence that these deposits were made for the purpose of being credited on the bank's debt and going to pay the bank's debt in that way. The testimony of Mr. Green, the cashier of the bank, before the referee in this case, is to this effect:

"Q. You recall when that money was brought there to deposit that it was the intention at the time to use it for this payment?  A. Which money is that?  Q. When the money was brought by the officers of the Fairburn Oil Company, it was brought there with the intention, at the time, of applying it, at the time, on this indebtedness?  A. Their account, as I remember it, was fairly active at that time, you know; they were collecting various sums from people who owed them at that time.  Of course, I understood all they had would be applied  to their indebtedness.  Q. You recall this was a separate fund, with the intention it would be paid on this indebtedness?  A. I thought all the amount they had would be applied to their indebtedness. Q. In other words, all the deposits they were making was intended to be applied on this indebtedness?  A. Yes, sir."

This and much other testimony along the same line shows very clearly that the money was not, in the language of the Circuit Court of Appeals, deposited "in the usual course of business," but was put in the bank with the understanding that it would be applied to the debts of the bank.   As the great bulk of the payments on the debts to the bank

was just a few days before the bankruptcy, and as it is perfectly clear that the officers of the bank knew that the Fairburn Oil & Fertilizer Company was in a failing condition, this money cannot be treated as an ordinary deposit in bank against which a set-off would be allowed. The decisions which allow such set-off, notwithstanding the fact that checks were given to pay it to the bank out of the bankrupt's account, do not contemplate a state of facts such as appears to have existed here; that is, that the bank officers, apprehending trouble from the customer, were getting all the money they could into the bank to apply to their own debt, as seems to be true here.

[2.] In addition to this, the debts paid off were notes indorsed by persons who were directors either of the bank or of the bankrupt company, or in some instances of both, and who were, apparently, personally interested in thus being relieved of their individual liabilities, and who were parties to the transactions resulting in the payments to the bank. Park's Code of Georgia, § 2222.

I am compelled to hold that the action of the referee in this matter should be approved and confirmed.