## MINNESOTA & ONTARIO POWER CO. v. LOSEY.

(Circuit Court of Appeals, Eighth Circuit. October 25, 1919.)

No. 5199.

1. BANKRUPTCY ⬳303(3)—SUIT TO RECOVER PREFERENCE; EVIDENCE AS TO OWN-ERSHIP.

Evidence in suit to set aside as a preference a transfer by bankrupt within four months of the filing of petition in bankruptcy *held* to sustain finding that property belonged to bankrupt, except certain paper furnished by defendant for bankrupt's customers, title to which remained in defendant till delivery to the customers, which has not taken place.

2. BANKRUPTCY ⬳302(1)—SUIT TO RECOVER PREFERENCE; BILL OF COMPLAINT.

Bill of complaint in suit to set aside as a preference a transfer of property by bankrupt within four months of the filing of petition in bankruptcy *held* sufficient; it reciting the statutory requirements, and it not being necessary to allege identity of the existing creditors with those at the time of the transfer.

3. BANKRUPTCY ⬳305—SUIT TO RECOVER PREFERENCE; JUDGMENT WITH STAY.

Defendant in suit to set aside a preferential transfer by bankrupt within four months of the filing of petition in bankruptcy is not entitled to have the judgment against it entered, with stay of execution till it has had opportunity to prove its claim in bankruptcy, with right then to have the amount thereof set off against the judgment, leaving execution to issue for the balance.

Appeal from the District Court of the United States for the District of Minnesota; Wilbur F. Booth, Judge.

Suit by L. L. Losey, Jr., trustee in bankruptcy of J. C. Brocklebank & Co., a bankrupt, against the Minnesota & Ontario Power Company. Judgment for plaintiff, and defendant appeals. Affirmed.

John Junell, of Minneapolis, Minn. (Thomas L. Philips, of Minneapolis, Minn., on the brief), for appellant.

L. A. Lecher, of Milwaukee, Wis. (Henry Deutsch, Ralph Whelan, and Donald Bridgman, all of Minneapolis, Minn., on the brief), for appellee.

Before CARLAND and STONE, Circuit Judges, and ELLIOTT, District Judge.

ELLIOTT, District Judge. The appellant, Minnesota & Ontario Power Company, hereinafter referred to as the defendant, is a corporation having its principal office at Minneapolis, Minn., engaged in the business of manufacturing and selling paper, its plant located at International Falls, Minn.

The appellee, L. L. Losey, Jr., hereinafter referred to as the plaintiff, is trustee in bankruptcy of J. C. Brocklebank & Co., an Illinois corporation, adjudicated bankrupt in the Northern district of Illinois on July 21, 1913, and its property is now in process of administration by that court. Its principal place of business was at Chicago, Ill., where it was engaged in the business of handling news print paper, securing and carrying out contracts with newspapers for supplying them with paper. It manufactured no paper.

---

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

This is a suit in equity to set aside an alleged transfer of property from the bankrupt to the defendant, made on February 18, 1913, in violation of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 544 [Comp. St. §§ 9585–9656]), which property so transferred consisted of cash, a promissory note, certain moneys due under contracts for paper delivered to publishing companies with whom bankrupt had contracts and which had not been paid for; also certain paper on hand in warehouses in St. Louis and Memphis, and paper en route to said cities from defendant's mill; also contracts of bankrupt for future delivery of paper to publishing companies.

Briefly stated, the plaintiff alleged in his bill the filing of the involuntary petition of bankruptcy within four months of the alleged preferential transfer, his election and qualification as trustee, his residence, and the order authorizing the bringing of this suit; that on February 18, 1913, bankrupt was indebted to defendant and other unsecured creditors in amounts in excess of its assets—was insolvent; that the bankrupt was then the owner of cash and property, including the contracts above referred to; that on February 18, 1913, defendant secured the payment to itself of the money and the transfer and assignment to it of the note and the property and all moneys due from the publishing companies for paper theretofore delivered, and that defendant appropriated same to its own use; that said property was all of the available assets of the bankrupt; that at said time bankrupt was indebted to a number of other unsecured creditors in large sums, and by reason of said payment and transfer such creditors were and will be unable to secure payment of their claims; that the defendant knew and had reasonable grounds to believe the bankrupt insolvent at the time, and that a preference would be effected by such payment and transfer. The plaintiff demands that the transfer of this property be set aside, and that defendant be required to account for the amount and value of the property so transferred.

Defendant answered with denials, and alleged that the property described in the bill belonged to the defendant, was its property and was held by bankrupt as agent of defendant, and as such the bankrupt turned same over to defendant; that the contracts for furnishing paper to the publishing companies were entered into by bankrupt as agent of defendant, pursuant to some prior agreement between bankrupt and defendant, and that bankrupt in carrying out these contracts acted as the agent for the defendant, and received the money from the publishing companies for it; that the moneys due under the contracts for paper so delivered, and the paper which had been shipped or was stored to carry out the contract, was at all times the property of and belonged to defendant.

At the close of plaintiff's case defendant moved to dismiss the action of the plaintiff, and as grounds for such motion alleged that the bill of complaint failed to state a cause of action, and that the plaintiff had failed to make out a cause of action or a right of action against the defendant. This motion was denied, and defendant duly excepted.

The trial court, after hearing defendant's testimony, made its find-

ings in favor of plaintiff and against defendant upon the issues presented by the pleadings, and specifically found:

(1) That J. C. Brocklebank & Co., on February 18, 1913, was in fact insolvent.

(2) Assuming that the property above referred to was the property of the bankrupt, the payment and transfer of the same to the defendant constituted a preferential transfer, within the meaning of the bankruptcy statute.

(3) Assuming that the property transferred belonged to the bankrupt, the effect of such transfer was to enable the defendant to obtain a greater percentage of its debt than any other creditor of bankrupt of the same class.

(4) Assuming there was a transfer of property from bankrupt to defendant on February 18, 1913, which effected a preference, the defendant at that time knew, and had reasonable cause to believe from the information disclosed by the record, that such transfer would effect a preference to it.

In view of these findings, abundantly supported by the record, the vital question presented here, and the one question seriously urged by both parties, is the answer to the question as to whether there was ever an unlawful transfer of the property of the bankrupt to the M. & O. Company. The determination of this issue has involved the examination of a long and tedious record, embraced within a mass of oral and documentary evidence taken at the trial, and included in the record presented here.

Just who actually owned the property transferred by bankrupt, to-wit, the moneys, papers, sums due upon contracts, and the interest in the contracts, and paper thereafter to be delivered, is entirely dependent upon the relation of the bankrupt and the defendant to each other, and the relation that each bore to the contracts made with the publishing companies; the furnishing of the paper and the filling of the contracts by the M. & O. Company pursuant to letters passing between that company and the bankrupt; its indorsement or underwriting of the contracts between bankrupt and the publishing companies—and all of this must be interpreted in the light of the attitude assumed by the respective parties with reference to the transactions in question. The ownership of this property so transferred is entirely dependent upon, and must be interpreted in the light of, all these, and the entire record must be considered.

The different portions of the record relating to the transactions between the parties and the attitude of the parties themselves toward each other, through these transactions, are so inconsistent with each other that, by eliminating a part of the outstanding features which would tend to interpret the understanding of one with the other, and considering a portion of the record only, support can be found for each of three conclusions.

First. The contention of defendant that the relation of bankrupt to the M. & O. Company was that of a factor of that company in the transaction of the business of the sale and delivery of paper to publishing companies, and when bankrupt made contracts with publishing

houses, and such contracts were underwritten or guaranteed by the M. & O. Company, in truth and in fact they were the contracts of the M. & O. Company with the publishing companies, and the M. & O. Company was the party really interested in the fulfilling of such contracts; that the contract price for the paper as it was paid for to the bankrupt was the property of the M. & O. Company, and that bankrupt had no right, title, or interest in or to such payments; that the same in its hands was a specific trust fund, belonging to the M. & O. Company, and that bankrupt only acted as agent or factor of the M. & O. Company, receiving commissions therefor.

In this view, of course, it must follow that bankrupt had no right title, interest, or ownership in or to the paper that was furnished or in the funds received therefor, and in so far as such funds could be identified, the M. & O. Company could have pursued this money in the hands of the bankrupt as against the claims of the other creditors.

Second. The contention of the bankrupt, which is perfectly consistent with portions of the record, that the bankrupt purchased this paper from defendant for a price f. o. b. mill of defendant; that it became responsible for the payment of shipping charges; that it arranged for storage; that it was stored in the name of bankrupt who paid the insurance; that the delivery by defendant to bankrupt was f. o. b. mill, that delivery was pursuant to the terms of the contracts of the bankrupt with the publishing companies, and the price was the price fixed by contract of bankrupt with defendant; that the time of payment was fixed by agreement between them to conform to the time of payment fixed in the contracts between the bankrupt and the publishing company, both as to amount and time; and, therefore, that all of this property, both the paper in process of transportation and in the warehouses, as well as the moneys in bankrupt's hands, were all the property and money of the bankrupt, used in and about its business, the paper being purchased by bankrupt from defendant for the purpose of delivery upon its contract.

There are numerous items found in the record of the testimony taken at the trial, tending to show the relations of these parties as they themselves acted, entirely consistent with the claim above stated. If this view of the facts should be taken, then the defendant company had no right, title, or interest to any of this property, either the paper or the proceeds of the sale of paper, in the hands of the bankrupt.

Third. The record, however, is open to a further interpretation, and that is the one placed upon it by the trial court, in substance and effect that the bankrupt entered into the contracts with the publishing companies upon his own account, and not as the agent or factor of the defendant; that these contracts were executory, to be completed by delivery of the paper and payment therefor in installments, the sales of the portions to be delivered from time to time to be completed sales with the delivery and the payment therefor; that defendant was in no wise a party to these contracts, except as it became surety or guarantor; that the money in the hands of bankrupt, collected upon delivery of the paper by bankrupt to the publishing companies, was deposited by bankrupt in either of two different banks to bankrupt's credit, there

being no testimony that defendant ever claimed or attempted to exercise any right of ownership to the particular funds collected, and no effort to enforce any trusteeship on the part of the bankrupt, the transactions as to delivery of paper and collection therefor being entirely confined to the bankrupt and the publishing companies; that the contract under which this paper was furnished to bankrupt by defendant was an agency contract in so far as the delivery of the paper by defendant to bankrupt was involved; that bankrupt received the paper, paid for its storage, which was in the name of bankrupt, paid the insurance —in short, paid for the care and handling of the paper between the mill and place of delivery to the publishing companies under and by virtue of its contracts with such companies; that the relation of bankrupt to defendant was that of debtor and creditor for the paper so delivered to the publishing companies, finding the amount that was due the defendant from bankrupt by computing the amount of the contract price as between them for the paper that had been delivered to the publishing companies and paid to bankrupt by such companies; that all of the paper supplied by defendant, while in transit and in storage, and until the delivery thereof by bankrupt to the publishers, was the property of the M. & O. Company; and, therefore, that the turning over of this property which was held in storage at the time in question did not constitute a transfer of property belonging to the bankrupt.

That this paper, while in storage and until delivery, was the property of defendant, is emphasized by the undisputed record, showing that a month's supply of paper was to be kept on hand at the places of storage by the defendant, more than was used, and in the event there was unused paper—that is, paper that had not been delivered by the bankrupt to the publishing companies—it is conceded by all parties to the record that such remaining paper was the property of the defendant.

The trial court, therefore, we think properly found that this paper, being a part of the property turned over to defendant by bankrupt, was not the property of bankrupt, and that the title thereto had always remained in the defendant.

A different situation exists, however, as to the money, aggregating $34,597.96, the note for $2,500, the assignment of moneys owing by the publishing companies to bankrupt, and the assignment of the contracts between bankrupt and the publishing companies, whereby the former was to deliver paper in the future. To none of these properties or classes of property had the defendant ever asserted any ownership, right, or title, and the transfer thereof by bankrupt to defendant upon the date named, in the light of the foregoing findings as to insolvency, etc., did constitute a transfer within the meaning of that term as it is used in the Bankruptcy Act, and it is conceded that the value of such property so transferred to defendant constitutes a greater percentage of the debt owed by bankrupt to defendant than the percentage of the remaining assets of bankrupt to the remaining liabilities, and, therefore, that the transfer was a preferential one.

We think, therefore, that the trial court did not err in finding that the dealings between bankrupt and defendant constituted an executory

contract between them, whereby defendant furnished bankrupt paper with which it filled the requirements of the publishing companies upon its contract with them; that the deliveries of the paper to the publishing companies completed the delivery to bankrupt; and that it became liable to defendant therefor, the terms of payment both as to time and amount being made definite and certain by the terms of the contract between the bankrupt and the publishing companies to which reference was repeatedly made.

These latter findings are entirely consistent with the findings of the trial court, and that the same are supported by the record does not admit of denial. The elaborate arguments presented from the viewpoint of the respective parties upon these questions of fact demonstrate conclusively the uncertainty of the record. The entire difficulty is the result of failure upon the part of the parties interested to definitely define their rights and duties by proper contract, instead of leaving their rights to be determined from contracts between bankrupt and the publishing companies, the guaranty of these contracts by defendant, letters passing between bankrupt and defendant, oral conversations had between representatives of the respective parties, and what was done by the respective parties from time to time. The record here made is such that a finding upon the theory advanced by either of the parties to the record is inconsistent with the interpretation placed upon their relations by their acts at different times embraced within and covered by the transactions between the parties.

A careful examination of this record, however, fails to disclose that the defendant ever at any time consistently acted with reference to the dealings in question in such a manner that it can reasonably be said that it deemed itself the owner of the moneys paid by the publishing companies to the bankrupt for the paper.

[1] With all of this uncertainty in this record, keeping in view the fact that the finding of any of the three situations above suggested must disregard much of the testimony, and fail to take into account the actions of the defendant and the bankrupt companies with reference to these transactions, we are of the opinion that this record by substantial testimony amply supports the findings made by the trial court, and that his findings ought not to be disturbed.

[2] We find no merit in the contention of defendant that the bill of complaint is insufficient to state a cause of action. The action is statutory and the bill fully recites the statutory requirements. The bill of complaint need not allege the identity of the existing creditors with those at the time of the alleged transfer in an action to recover a preference. The citations by the appellant are not those of suits to recover preferences, but are to avoid transfers in fraud of creditors, which suits may be brought at any time subsequent to the transfer, and are not limited to the four months. In suits to avoid transfers in fraud of creditors, allegations are required such as are insisted upon by the defendant here. It may be added, however, that before defendant made its motion to dismiss the bill at the close of plaintiff's case, evidence had been introduced fully covering all of the matters which appellant insists should have been stated in the bill of complaint. This

evidence showed the identity of the creditors at the time this alleged transfer was made, and also that their claims had been allowed in the bankruptcy proceeding.

The trial court properly included within its decree that the same was entered without prejudice to the right of the defendant company to prove in the bankruptcy court its claim against the bankrupt company.

[3] Without reviewing the several provisions of the Bankruptcy Act involved in this determination of the court, the contention of the defendant that the judgment should have been entered with stay of execution until it had opportunity to prove its claim in the bankruptcy court, and having done so, then have the amount thereof set off against the judgment, leaving execution to issue for the balance, is denied. Boatman's Bank v. Laws et al., 257 Fed. 299, —— C. C. A. ——; Moise v. Scheibel, 245 Fed. 546, 157 C. C. A. 658.

The judgment of the trial court is affirmed