### PLYMOUTH COUNTY TRUST CO. v. MAC-DONALD.

### No. 2541.

Circuit Court of Appeals, First Circuit.

June 27, 1932.

Joseph B. Jacobs, of Boston, Mass. (Herbert C. Thorndike, of Brockton, Mass., and Jacobs & Jacobs, of Boston, Mass., on the brief), for appellant.

Robert A. B. Cook, of Boston, Mass. (Walter J. MacDonald, of Brockton, Mass., and J. B. Rintels, of Boston, Mass., on the brief), for appellee.

Before BINGHAM, WILSON, and MORRIS, Circuit Judges.

## WILSON, Circuit Judge.

The Supreme Court in this case in an opinion delivered May 16, 1932 (52 S. Ct. 505, 76 L. Ed. ——), having held that a referee in bankruptcy, even though having no jurisdiction in a proceeding to recover funds belonging to the bankrupt while in the hands of a third party, either in a plenary suit or in summary proceedings, may, with the consent of the adverse party, determine on petition the right of a trustee in bankruptcy to such funds, it becomes necessary to dispose of the case on its merits.

The facts are as follows: The Craig, Reed & Emerson, Inc., is a corporation formerly engaged in the manufacture of shoes, and disposed of its product largely through chain stores. From 1926, when it lost its largest customer, its business was conducted at a loss.

For some time it had done its banking business with the appellant. In June, 1929, it was owing the appellant on a demand note $36,500. Up to March 8, 1927, its indebtedness was represented by time notes. On the latter date officials of the bank, knowing that the bankrupt was losing money, refused to carry the loan in the form of time notes and required the bankrupt to give a demand note. From that time the corporation was unable to reduce its loan, and the bank officials knew that to force payment would close up the business.

In June, 1929, the bankrupt's affairs, according to the findings of the referee in bankruptcy, had reached a point where it had become a question of whether it could longer continue in business. A meeting of its stockholders was called, at which the president of the appellant bank attended. At that meeting the stockholders, after discussion, determined to allow the corporation to continue business for three months longer. To this the president of the appellant bank, if not vocally assenting, did not object.

The bankrupt continued to do business and made its deposits with the appellant bank, subject to check as formerly. For some time prior to July 10, 1929, the bankrupt manufactured chiefly for one customer, which paid its monthly bill about the middle of the month. On the morning of July 12, 1929, there was a balance in the bankrupt's account of $5,657.79. Of this $4,402.29 represented collected funds and the balance, checks, or drafts not yet honored.

On this day the bank received word of the deposit the day before in a branch of the bank of three checks totalling $15,100.78, which were forwarded by the branch bank and received at the main office on the morning of the 12th. The bank then proceeded, in accordance with its usual monthly custom, to appropriate $375 of the collected funds in the bankrupt's account to rent due the bank from Craig, Reed & Emerson, Inc., and also applied to its "frozen loan" the balance of the collected funds in the account, viz. $4,-027.29; and also paid and charged against the balance of its account then represented

by uncollected funds, several small checks, leaving a balance at the close of July 12th of $843.58.

Upon receipt of the checks for $15,100.78 at the main bank, they were immediately forwarded to New York for clearance by registered letter, with instructions to notify the appellant by wire if they were honored. Not receiving notice of their honor on the morning of the 13th, it again wired for a report, which it received by wire on the 13th, and proceeded forthwith to apply the amount of these checks to the balance due on its note, and from that time refused to honor any checks of the bankrupt, except pay roll checks, which it did on the advice of counsel. On July 15th, it also applied the balance of the bankrupt's account, amounting to $1,348.72, to its note, and notified the bankrupt that it had called the loan and demanded that the bankrupt make an assignment to its assistant treasurer for the benefit of creditors. The bankrupt did not receive notice of the application of the funds until July 17th, when it protested.

In September following, a petition in bankruptcy was filed, a trustee in bankruptcy appointed, who filed a petition with the referee to order the bank to turn over to the trustee the sum of $20,476.79, as a preference received by the bank under section 60a of the Bankruptcy Act (11 USCA § 96 (a), which sum included only the sums of $4,027.29, $15,100.78, and the sum of $1,348.72 applied to the note of July 15th. It does not include any sum for the $375 paid for rental.

The referee held that the application to the bank's note of the proceeds of the checks deposited in the branch bank on July 11th totalling $15,100.78, and also the additional sum applied on July 15th, but for some reason which does not appear, only to the amount of $1,007.71, or a total of $16,108.49, were preferences, which the referee ordered the bank to restore to the trustee with interest from November 27, 1929, the date of adjudication in bankruptcy. The referee held, however, that the application of the amount of collected deposits on July 12th of $4,027.29, and the sum of $375 applied to rent (though the latter does not seem to be involved in the trustee's petition) were properly applied as a set-off; said sum having been received as deposits in due course of business.

The District Court approved the finding of the referee that the application of the deposit of $15,100.78 was a preference, and also held that the application of the balance of the account on July 15th, which the record shows was $1,348.72 was likewise a preference; but the District Court held that the application of the sum of $4,027.29 on July 12th also constituted a preference under the authority of Bailey v. Merrimack Bank (D. C.) 283 F. 514; also see Merrimack National Bank v. Bailey (C. C. A.) 289 F. 468; and ordered the bank to pay to the trustee in bankruptcy the sum of $20,476.79, instead of the sum of $16,108.49 held to be recoverable by the referee, but with interest to run only from the filing of the petition to recover on the ground that the record did not show that any prior demand had been made by the trustee.

It is clearly evident from the record, and the referee, if not expressly, in effect found that the officials of the bank decided, at least as early as July 12th, if not on July 10th, when its vice president directed its bookkeeper to notify him of any checks drawn or deposits to the credit of the Craig, Reed & Emerson, Inc., account, in order to recoup as far as possible the loss they then knew the bank would eventually suffer, to apply all funds in this account to the note held by the bank, and that the bank would honor no more checks of the corporation, except such as were for claims entitled to a preference in case of liquidation, either under an assignment or in bankruptcy. The bank officials took this action, knowing it would close down the business of the corporation and precipitate an assignment or bankruptcy.

There is no question, we think, that the application by the bank of the sums of $15,100.78, and the sum of $1,348.72 to its note constituted preferences. These sums were clearly accepted by the bank with intent to apply them on its note. The only issue in the case is whether the application of the amount of $4,027.29 on July 12th was done under such circumstances as also to constitute a preference under section 60a of the Bankruptcy Act.

But it does not follow because a bank knows that a depositor is insolvent that the application of funds on deposit in a checking account to a claim against the depositor constitutes a preference. A bank is permitted to apply funds on deposit, and received in the usual course of business, to a claim against the depositor under section 68 of the act (11 USCA § 108) relating to set-offs. American Bank & Trust Co. v. Coppard (C. C. A.) 227 F. 597; New York County National Bank v. Massey, 192 U. S. 138, 24 S. Ct. 199, 48 L.

Ed. 380; Studley v. Boylston National Bank, 229 U. S. 523, 33 S. Ct. 806, 57 L. Ed. 1313.

This case is distinguishable from that of Merrimack National Bank v. Bailey, supra. In that case the bankrupt was already being operated by a committee of creditors for the benefit of creditors, and any deposits made were understood to be for the benefit of all creditors, and were not held by the bank subject to check for any other purpose. Here no action had been taken by any creditors prior to July 12th. The only action was taken by the stockholders, with the president of the appellant bank present, at which meeting it was voted to continue the business for three months longer.

■ The deposits prior to July 10th were, of course, not made by the bankrupt with any idea of giving a preference to the bank, nor were they received, as the referee found, with any intent on the part of the bank to apply them to its claim, but subject generally to the corporation checks. The bank continued to receive deposits and honor checks up to July 12th. It was not until the receipt of the check for $15,100.78 on the morning of the 12th that the officers of the bank evidently saw an opportunity to anticipate a loss they foresaw it would inevitably suffer, and applied all collected funds to the note. Even though the bank officials well knew that the proposed action would force an assignment or bankruptcy, the bank had its right to set-off, even prior to bankruptcy, of any sums received on deposit in the usual course of business. That a creditor with a right of set-off thereby secures an advantage to the extent of its claim against the bankrupt is not the test. Was it done, knowing that the debtor was insolvent and with the intent to secure a preference within the meaning of the Bankruptcy Act?

■ The deposits making up the $4,027.29 applied on July 12th, were made with the understanding on the part of the depositor that they were subject to be withdrawn on its checks for a period of at least three months, and were received by the bank with the same understanding. The record discloses no intent on the part of the bank on receiving deposits prior to July 10th to apply them on its note, but rather an intent to hold them subject to check, and they were, of course, deposited by the bankrupt, to be drawn against as needed in conducting its business. The acceptance by the bank of the checks for $15,100.78 on the 12th, and all other checks or drafts collected on or after that date, were not received and accepted by the bank with any intent on its part to hold them subject to check, but with the obvious intent to apply them on its claim and to gain an advantage over other creditors, which constituted a preference. Kane v. First National Bank of El Paso, Tex. (C. C. A.) 56 F.(2d) 534, 537; Rupp v. Commerce Guardian Trust & Savings Bank (C. C. A.) 32 F.(2d) 234; Elliotte v. American Savings Bank & Trust Co. (C. C. A.) 18 F.(2d) 460.

The findings of the referee that the sums received prior to July 12th were received in the usual course of business, and were subject to the right of set-off, are, we think, well founded on the record. The bank should have been ordered to pay to the trustee the sum of $16,449.50 with interest.

■ Interest on the sum ordered to be paid to the trustee should be computed from the date of the filing of the petition and not from adjudication, no prior demand of the bank by the trustee being shown. Elliotte v. Am. Savings Bank & Trust Co., supra.

The order of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion; the appellant recovers costs of appeal.