## MacDONALD v. GUY, Com'r of Banks.
### No. 2759.

Circuit Court of Appeals, First Circuit.

Feb. 13, 1933.

Robert A. B. Cook, of Boston, Mass. (Walter J. MacDonald, of Brockton, Mass., and Jonathan B. Rintels, of Boston, Mass., on the brief), for appellant.

Edmund R. Dewing, of Boston, Mass. (Warren F. Farr, of Boston, Mass., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

In June, 1929, the Craig, Reed & Emerson, Inc., a corporation engaged in the manufacture of shoes and hereinafter referred to as the Shoe Company, was undoubtedly insolvent. A meeting of its stockholders was held and the president of the Plymouth Trust Company (hereinafter referred to as the Trust Company), a state banking institution under the laws of Massachusetts, attended. At this meeting it was agreed by those present to allow the corporation to continue business three months longer. That a liquidation of its affairs was necessary was clearly apparent. The Shoe Company was then owing the Trust Company on unsecured notes on which no payment had been made since 1927, and which the referee in bankruptcy has described as a "frozen loan," $36,500.

The Shoe Company had one large customer, which paid its bills about the tenth of the month, of which the Trust Company

had knowledge. The Shoe Company continued, after the meeting in June, to deposit with the Trust Company in the usual course of business, and the bank received its deposits up to July 11, 1929, with the understanding that they were subject to check.

On July 11 a check in the amount of $15,100.78 was sent to a branch of the Trust Company for deposit in the usual course, which, together with certain other funds then on deposit or thereafter received from the Shoe Company, totaling $20,476.79, the Trust Company applied on the notes of the Shoe Company, and demanded a payment of the balance of its loan, and an assignment to its cashier. The result was a petition in bankruptcy in September, 1929.

·The trustee in bankruptcy filed a petition with the referee in bankruptcy to order the Trust Company to pay to the trustee the sums thus credited on its note. The referee in bankruptcy found that of the $20,476.79 so applied on its debt by the Trust Company, the application of $16,108.49 was misappropriated by the Trust Company and resulted in a preference, as it was not received in the usual course of business, but with knowledge of the insolvent condition of the bankrupt and with an intent to gain an advantage over other creditors.

The District Court on review of the referee's findings held that the total amount applied on the debt of the bankrupt, or $20,476.79, constituted a preference, and ordered the Trust Company to pay the entire sum to the trustee in bankruptcy. In re Craig, Reed & Emerson, 46 F.(2d) 811. On appeal, this court in Plymouth County Trust Co. v. MacDonald, 60 F.(2d) 94, on June 27, 1932, held that only so much as was received by the bank after July 11, and with the intent to apply it on its own debt, was a fraud upon other creditors, or $16,449.50, and remanded the case to the District Court for further proceedings in accordance with its opinion.

While the proceedings to determine whether the Trust Company was liable to the trustee for the alleged misapplication of these funds were pending, the commissioner of banks of Massachusetts on December 17, 1931, by virtue of the authority vested in him under sections 22 and 28 of chapter 167 of the General Laws of Massachusetts (Ter. Ed.) took possession of the assets of the Trust Company, and gave notice to all creditors to present their claims to him on or before September 1, 1932.

At some time after June 27, 1932, and prior to August 25, 1932, the appellant filed with the commissioner two proofs of debt in behalf of the bankrupt estate, each totaling $19,333.07, representing the amount found due to the trustee in bankruptcy from the bank, with interest and costs, one alleging that the trustee was entitled to priority of payment, and the other, that proof was filed subject to his right of priority of payment from the estate of the Trust Company.

On August 25, 1932, the trustee in bankruptcy was notified that the claims were rejected by the commissioner for the reason that he doubted the "justice and validity thereof." Section 28 of chapter 167, G. L. Mass. (Ter. Ed.).

On September 8, 1932, a petition was filed in the bankruptcy court to join the commissioner as a defendant, and setting forth substantially the above facts; and, in addition, that the commissioner did not intend to apply any assets of the Trust Company to the payment of the claim of the trustee in bankruptcy, but proposed to apply the notes of the Trust Company in set-off against the claim of the trustee in bankruptcy; and also alleging that the sum of $16,449.50, the amount determined by this court to constitute a preference, was unlawfully and improperly appropriated and converted by the Trust Company, and that the title to the money remained in the Shoe Company, and is now vested in the appellant as said trustee in bankruptcy; that said commissioner, since he is setting up a claim adverse to the trustee in bankruptcy, should be joined as a proper party to the petition in the bankruptcy court; whereupon the trustee prays that the assets and property of the Trust Company to the amount of $16,449.50, together with interest, be declared to be impressed with a trust in favor of the trustee in bankruptcy, and that the commissioner be ordered to deliver said sum to said trustee.

The court of bankruptcy has authority, we think, under section 70e of the act (11 USCA § 110 (e), to treat the petition as a petition in equity to enforce a trust, and hear the parties upon petition and answer. Whitney v. Wenman, 198 U. S. 539, 25 S. Ct. 778, 49 L. Ed. 1157; United States Fidelity & Guar. Co. v. Bray, 225 U.S. 205, 32 S. Ct. 620, 56 L. Ed. 1055.

The commissioner appeared specially and filed a motion to dismiss the petition on the ground that the issue should properly be submitted to the Supreme Court of Massachusetts for determination, and that the bankruptcy court is without jurisdiction. After hearing in the court of bankruptcy, the petimined

tion was dismissed and appeal taken to this court.

The commissioner contends that the case is ruled by the decision of this court in the case of People's Trust Co. v. United States, 23 F.(2d) 381; while the trustee in bankruptcy contends it is controlled by Allen, Bank Commissioner, v. United States (C. C. A.) 285 F. 678. The facts in this case, however, do not correspond exactly to the facts in either of these cases, though many questions involved here were decided therein.

In the case of People's Trust Co. v. United States, the deposits of post office funds were unlawfully received, the bank not being designated a depository for such funds. Under the New Hampshire statute the bank commissioner of that state, on application to the state court, was appointed a receiver of the assets of the bank, whereupon the United States presented its claim to the bank commissioner as receiver. This court, inasmuch as the state court had taken possession of the res, and the United States had presented its claim to the res before the receiver, held that the federal court had no jurisdiction over them, and ordered that the bill in equity brought by the United States to order the receiver to pay to the United States the funds so deposited, be dismissed for want of jurisdiction, and it was so ordered.

In the case of Allen v. United States, where there was the same unauthorized deposit of post office funds in a Massachusetts trust company, the commissioner of banks of Massachusetts took possession of the assets of the trust company by virtue of section 22, chap. 167, G. L. Mass., and not by any action of the state courts. The Supreme Court of Massachusetts has held that in so doing the commissioner of bank acts, not as a receiver appointed by the court, but purely as an administrative officer of the state. Cosmopolitan Trust Company v. Mitchell, 242 Mass. 95, 113, 136 N. E. 403, 405, in which case the court said:

"The powers conferred upon the commissioner of banks are not judicial but purely administrative. His decision to take possession is not a judicial adjudication. It binds nobody. It is subject to immediate judicial inquiry. The act of the commissioner of banks is designed primarily to conserve the property of the bank for the benefit of its creditors and its stockholders."

As further distinguished from the New Hampshire case, the United States in the Allen Case did not present its claim to the commissioner of banks of Massachusetts, but brought a bill in equity to recover the funds as impressed with a trust in the hands of the commissioner of banks.

This court held in that case that in consequence of the unlawful receipt of the funds, they were held in trust by the bank, and were impressed with a trust in the hands of the commissioner of banks in favor of the United States as beneficiary; and that the commissioner of banks should report the claim of the United States to the clerk of the Supreme Court of Massachusetts under section 29 of chapter 167, as a claim proved and allowed by him; but since there might have been others for whom funds were also held in trust by the bank, and as the general assets of the bank might not be sufficient to pay them all in full, it should be left to the state court to determine these facts, and order distribution accordingly.

If, as the Massachusetts court holds, the commissioner of banks of Massachusetts is not a receiver or an officer of the state court, but an administrative officer of the state, it cannot be held that the assets of the trust company are in custody of the state court, as was held in the People's Trust Co. Case, supra; and since the Trust Company wrongfully appropriated these funds to its own use, they were at the time impressed with a constructive trust in favor of the Shoe Company, and its trustee in bankruptcy. While the trustee filed a claim for the funds with the commissioner of banks, and claimed priority, the commissioner rejected the claim on the ground that it was without justice and of no validity.

This court has already held in Plymouth County Trust Co. v. MacDonald, Trustee, 60 F.(2d) 94, that the trustee was entitled to the funds so misappropriated by the Trust Company, and that the Trust Company was not entitled to set off the amount due on the notes of the Shoe Company held by the Trust Company; also see Mechanics' & Metals' Nat. Bank v. Ernst et al., 231 U. S. 60, 34 S. Ct. 22, 58 L. Ed. 121; Minnesota & Ontario Power Co. v. Losey (C. C. A.) 260 F. 689.

This decision as to the right of the trustee in bankruptcy to these funds is res adjudicata (Riehle v. Margolies, 279 U. S. 218, 225, 49 S. Ct. 310, 73 L. Ed. 669), and the bank commissioner should have reported the claim, at least among the general list of creditors of the Trust Company.

There remains, however, the question of whether any funds in the hands of the commissioner of banks are impressed with a trust

to the amount of the funds misappropriated by the Trust Company, with interest. The trustee's petition does not set forth sufficient facts to enable the bankruptcy court to determine whether the funds so misappropriated can now be traced into the assets now held by the commissioner of banks, or what assets of the Trust Company are in the hands of the commissioner. American Can Co. v. Williams (C. C. A.) 178 F. 420, 423, 424. Since the commissioner sets up an adverse claim to these funds by refusing to allow the claim of the trustee in bankruptcy, and since the bankruptcy court has already taken jurisdiction over the issue, if not also over the res, we think the bankruptcy court should retain jurisdiction to determine the question of whether there are any funds in the hands of the commissioner of banks impressed with a trust in favor of the trustee in bankruptcy, especially since the rule as to tracing trust funds in the hands of a transferee seems to differ somewhat in the federal courts from that applied in the Massachusetts courts. In the latter it is held that it must be shown that the property or money has passed into "specific property or a definite fund," which may be distinguished from general assets before there can be reclamation or priority of payment. Salem Elevator Works, Inc., v. Com'r of Banks, 252 Mass. 366, 372, 148 N. E. 220; Lowe v. Jones, 192 Mass. 94, 78 N. E. 402, 6 L. R. A. (N. S.) 487, 116 Am. St. Rep. 225, 7 Ann. Cas. 551; Old Colony Trust Co. v. Puritan Motors Corp., 244 Mass. 259, 265, 138 N. E. 321.

The rule recognized in the federal courts holds that when funds are deposited in a bank and misappropriated by the bank, if it can be shown that they have not been entirely dissipated, the general fund of the bank may be held to be impressed with a trust to the extent that the funds so deposited have not been dissipated, and, of course, if they can be traced into some specific fund or property into which they have been converted, such fund is impressed with the trust. According to the federal rule, the mingling of misappropriated funds with the general funds of a bank is not sufficient to destroy the trust. In Brennan v. Tillinghast (C. C. A.) 201 F. 609, at page 613, the court stated the federal rule as follows:

"And proof that the tort-feasor has mingled the trust funds with his own and made payments thereafter out of the common fund, is, nothing else appearing, a sufficient identification of the remainder of that fund coming into the hands of the receiver, not exceeding the smallest amount the fund contained subsequent to the commingling, as trust property, under the legal presumption that he regarded the law and neither paid out the trust fund nor invested it in other property, but kept it sacred."

It was so held in Allen v. United States, supra, at page 681 of 285 F. In that case the court said:

"While the burden is upon the beneficiary to trace the trust fund, we think, under the circumstances of this case, this has been done and that the cash effects in the commercial department of the trust company which have come into the possession of the commissioner are impressed with a trust in favor of the United States for the full amount of $12,520.-79."

Among the numerous federal authorities in support of the rule laid down in the case of Allen v. United States are: Frelinghuysen v. Nugent (C. C.) 36 F. 229; Peters v. Bain, 133 U. S. 670, 10 S. Ct. 354, 33 L. Ed. 696; Central National Bank v. Connecticut Mutual Life Ins. Co., 104 U. S. 54, 68, 26 L. Ed. 693; Standard Oil Co. of Ky. v. Hawkins (C. C. A.) 74 F. 395, 33 L. R. A. 739; Board of Commissioners of Crawford County v. Strawn (C. C. A.) 157 F. 49, 15 L. R. A. (N. S.) 1100; In re Brown et al. (C. C. A.) 193 F. 24; In re See (C. C. A.) 209 F. 172; Titlow v. McCormick (C. C. A.) 236 F. 209; United States National Bank of Centralia et al. v. City of Centralia (C. C. A.) 240 F. 93; Schuyler v. Littlefield, 232 U. S. 707, 34 S. Ct. 466, 58 L. Ed. 806.

In Frelinghuysen v. Nugent, supra, at 239 of 36 F., the court said:

"Another difficulty in the complainant's case is the want of identity of the property claimed with the proceeds of the money abstracted from the bank. Formerly the equitable right of following misapplied money or other property into the hands of the parties receiving it, depended upon the ability of identifying it; the equity attaching only to the very property misapplied. This right was first extended to the proceeds of the property, namely, to that which was procured in place of it by exchange, purchase, or sale. But if it became confused with other property of the same kind, so as not to be distinguishable, without any fault on the part of the possessor, the equity was lost. Finally, however, it has been held as the better doctrine that confusion does not destroy the equity entirely, but converts it into a charge upon the entire mass, giving to the party injured by

the unlawful diversion a priority of right over the other creditors of the possessor. This is as far as the rule has been carried."

We do not think that the filing of the claim with the commissioner of banks brings this case within the case of People's Trust Co. v. United States, supra. The res in this case have not come into the possession of the state court, but remain in the hands of the administrative officer. The trustee was following substantially the course laid down in Allen v. United States, which he had a right to do, upon the assumption that his right to the fund had already been established.

We are, therefore, of the opinion that the decree of the District Court should be reversed; that the commissioner of banks should be joined in these proceedings and be required to answer the petition; that the trustee should be permitted to amend his petition, setting forth, if he so claims, that there are funds remaining in the hands of the commissioner of banks which are impressed with a trust in favor of the trustee in bankruptcy; and upon the determination of this issue the proceedings outlined in the case of Allen v. United States should be followed in order that the state court may determine whether there are any other trust funds held by the commissioner of banks entitled to share equally with the trustee in bankruptcy as to priority over general creditors.

The decree of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion.