# SCHUYLER *v.* LITTLEFIELD, TRUSTEE OF BROWN & CO.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE
SECOND CIRCUIT.

No. 213.  Argued January 29, 1914.—Decided March 23, 1914.

Where one has deposited trust funds in his individual bank account and
the mingled fund is at any time wholly depleted, the trust fund is
thereby dissipated and cannot be treated as reappearing in sums
subsequently deposited to the credit of the same account.

One seeking to charge a fund in the hands of a trustee for the benefit
of all creditors as being the proceeds of his property and therefore a
special trust fund for him, has the burden of proof; and if he is un-

able to identify the fund as representing the proceeds of his property, his claim must fail as all doubt must be resolved in favor of the trustee who represents all creditors.
193 Fed. Rep. 24, affirmed.

THE facts, which involve determining the relative rights to the bank balance of a bankrupt stockbroker, of the trustee and of a customer whose securities the bankrupt had sold, are stated in the opinion.

Mr. W. Benton Crisp, with whom Mr. Theodore M. Crisp was on the brief, for appellants:

The bankrupts wrongfully and fraudulently converted the property of the appellants. This was found by both courts below.

The bankrupts commingled the proceeds of appellants' property with that of their own, and the combined or commingled funds having been traced into the Hanover National Bank funds, a part of which are now in the hands of the trustee, so long as any portion of said funds remained, the appellants are entitled to have their money paid out of them and if said funds were used to release collateral in the bank, which collateral, or the proceeds of which collateral, went into the hands of the trustee, they should be impressed with a lien in favor of the appellants. *Gorman* v. *Littlefield*, 229 U. S. 19; *Peters* v. *Bain*, 133 U. S. 670; *Frelinghuysen* v. *Nugent*, 36 Fed. Rep. 229, 239; *In re Marsh*, 116 Fed. Rep. 396; *Erie Railroad Co.* v. *Dial*, 140 Fed. Rep. 689; *In re Royea*, 143 Fed. Rep. 182; *Smith* v. *Motley*, 150 Fed. Rep. 266; *Smith* v. *Township*, 150 Fed. Rep. 257; *In re Stewart*, 178 Fed. Rep. 463, 470; *National Bank* v. *Insurance Co.*, 104 U. S. 54; *Cavin* v. *Gleason*, 105 N. Y. 256; *Knatchbull* v. *Hallet*, L. R. 13 Ch. Div. 696.

All equities are in favor of the appellants. They have been fraudulently deprived of their property and if they are unable to obtain it in this proceeding, the general

creditors of the bankrupts will profit by the fraudulent acts of the latter. This is not in keeping with the policy of the Bankruptcy Law. *Hurley* v. *Atchison &c. Ry. Co.,* 213 U. S. 126, 134; *In re Chase,* 124 Fed. Rep. 753.

*Mr. Edwin D. Hays,* with whom *Mr. Daniel P. Hays* and *Mr. Ralph Wolf* were on the brief, for appellee:

The burden was on the appellants to show that their property, or the proceeds thereof, came into the hands of the trustee. *First National Bank* v. *Littlefield,* 226 U. S. 110; *In re McIntyre,* 181 Fed. Rep. 960; *American Can Co.* v. *Williams,* 178 Fed. Rep. 420; *Matter of Hicks,* 170 N. Y. 195.

All trust funds deposited by the bankrupts in the Hanover National Bank prior to the certification on August 25 of the check for $146,600 to Coombs & Co. were dissipated by the certification of said check, and no funds so deposited came into the hands of the receiver or trustee.

The cases in appellants' brief do not conflict with the position taken by the appellee on this appeal.

It is undoubtedly the law that if trust moneys or property are mingled with other moneys or property by a trustee, they may be followed by *cestui que trust,* so long as the fund into which they go is not dissipated. This is true even if the trust money or property loses its identity by reason of the mingling provided the fund into which it went is still in existence. *First National Bank* v. *Littlefield, supra.*

If trust money is wrongfully placed by the trustee in his general bank account and mingled with other moneys of the trustee, the claimant may still follow them so long as he can show a balance remained continuously in the account from the time of the deposit equal to the amount claimed, but if the account is entirely depleted as was the bankrupts' account in the case at bar by the certification of the Coombs checks, the trust moneys become dissipated and no longer traceable.

MR. JUSTICE LAMAR delivered the opinion of the court.

This record presents for determination another of the many questions arising out of the tangled and complicated affairs of Brown & Co., stockbrokers of New York City, who made an assignment on August 25, 1908, and who were subsequently adjudged bankrupts. The proceeding is by Schuyler, Chadwick & Burnham, to recover trust funds which they claim to have traced into the possession of Brown & Company's Trustee in bankruptcy. The case involves an application of the rule that where one has deposited trust funds in his individual bank account and the mingled fund is at any time wholly depleted the trust fund is thereby dissipated, and cannot be treated· as reappearing in sums subsequently deposited to the credit of the same account. *Knatchbull* v. *Hallett*, L. R. 13 Ch. Div. 696; *Peters* v. *Bain*, 133 U. S. 671 (1), 693; *Board of Com'rs* v. *Strawn*, 157 Fed. Rep. 49, 54.·

There is no controversy about the law, but a complete disagreement about matters of fact where it is necessary to decide with certainty, on the one hand, the exact time and order in which a series of checks were deposited; and, on the other, to determine, with equal certainty, the exact order in which a series of checks drawn on that account were paid and what use was made of the money so drawn. As the bankruptcy occurred on August 25, 1908, and as the testimony was taken several months later, it is not surprising that the witnesses were not able to establish definitely the order in which these transactions took place, nor that the Referee, District Judge and Court of Appeals each differed from the other as to what·had been proved. The Referee found that Schuyler, Chadwick & Burnham had traced their funds into the hands of the Trustee and were therefore entitled to· recover. The District Judge agreed with the Referee in this conclusion but disagreed with him as to some of the·findings of fact

on which that conclusion was based.  The Circuit Court of Appeals disagreed with both and held that the trust fund had not been traced into the hands of the Trustee and thereupon dismissed the complaint.  The appeal from that decree involves a consideration of the facts, which may be thus briefly stated:·

Brown & Co. were brokers in New York City, and on August 24th, 1908, by false representations of solvency obtained from Schuyler, Chadwick & Burnham, 300 shares of Interborough stock (worth $32 per share) agreeing at once to send in payment a check for $9,600, capable of certification.  This was not .done and in spite of repeated demands the check was not delivered until after banking hours on August 24th and too late to have it certified that day.  In the meantime Brown & Co. sold to Miller the

| | |
|---|---|
| 300 shares Interborough, for.............$ | 9,600 |
| 1000 shares Northern Pacific............. | 143,000 |
| 1000 shares Great Northern.............. | 137,000 |
| Total..................... | $289,600 |

Miller thereupon gave Brown & Co. a check for $266,600, which was deposited in the Hanover National Bank on August 24.  Miller retained the balance of $23,000 on some claim which was not admitted by Brown & Co.  They later that day obtained from Miller a check for $23,000, which was deposited in the bank the next morning, but after the Bank had refused to pay or certify the Schuyler, Chadwick & Burnham check for $9,600.

It thus appeared that the stock fraudulently obtained by Brown & Co. had been sold by them, with other stock, to Miller who paid for the whole in two checks—one for $266,600 deposited to Brown & Co.'s account in the Hanover National Bank on August 24th, and another for $23,000 deposited in the same bank on August 25th.

1. If the trust fund of $9,600 was included in the check

for $266,600, then it was dissipated except to the extent of $6,180.17, which was the sum left to Brown & Co.'s credit at the close of business on August 24th. And inasmuch as all of that balance was paid out early the next day, the trust fund was thereby wholly dissipated so far as the bank account was concerned.

If, however, the trust fund of $9,600 is to be treated as having been included in Miller's check for $23,000, then a similar result follows, though on this point the evidence of the witnesses and the findings of the two courts are in conflict. The controlling question was whether the $23,000 had been deposited before or after the payment of a check for $146,000 which absorbed the whole amount then in bank. We see no reason to disturb the finding of the Circuit Court of Appeals that the check for $23,000 was deposited soon after the Bank opened on August 25th, and that it, with other money deposited during the morning, was used at about 11.30 A. M. to pay this check for $146,000 given by Brown & Co. to Coombs & Co. The payment of this large sum depleted the account and dissipated the trust fund in bank.

2. The appellants, however, presented their case in a double aspect. They contended that even if the trust fund of $9,600 was checked out of the bank they are able to trace the fund into stocks that subsequently came into the hands of the Trustee in Bankruptcy. This was based on the claim that out of the proceeds of the Miller checks, Brown & Co. had paid notes due to the bank and thereby released collateral which ultimately came into the possession of the Trustee.

But the record fails to show when the $266,600 was deposited and it also fails to show with the requisite certainty the particular use made by Brown & Co. of that money. The banking transactions on August 24th involved several millions of dollars. Money was deposited by Brown & Co. in the bank and money was borrowed by

Brown & Co. from the bank. Part of the loans were deposited to their bank account and a part, represented by cashier's checks, did not appear in that account. Money was paid by Brown & Co. to outsiders and to the bank. Payments to the bank were made on accounts of notes, some of which represented loans appearing in the deposit account, and others represented loans which had not been so entered. Some of the loans were secured and others were unsecured, and whether the money received from Miller (which included the trust fund of $9,600), was used to pay the secured or unsecured loans does not appear with certainty.

It would serve no useful purpose to make a detailed statement of the testimony. The evidence has been fully discussed by the Court of Appeals (193 Fed. Rep. 24–33) in considering this claim of appellants along with that of several other parties seeking, on somewhat similar facts, to trace trust funds into the bank and thence into collateral which ultimately came into the hands of the Trustee. All these claims were disallowed because of the failure to make the requisite proof. Our investigation of the facts leads us to the same conclusion so far as concerns the appellants' claim. They were practically asserting title to $9,600 said to have been traced into stock in the possession of the Trustee. Like all other persons similarly situated, they were under the burden of proving their title. If they were unable to carry the burden of identifying the fund as representing the proceeds of their Interborough stock their claim must fail. If their evidence left the matter of identification in doubt the doubt must be resolved in favor of the Trustee, who represents all of the creditors of Brown & Co., some of whom appear to have suffered in the same way. Like them, the appellants must be remitted to the general fund.

*The decree is affirmed.*