**In re HOLLINS & ARROUSEZ ELECTRIC & ENGINEERING CO.**

**ALLIS–CHALMERS MFG. CO. v. MOORE et al.**

Circuit Court of Appeals, Ninth Circuit. February 25, 1929.

No. 5644.

Ray Howard and A. S. Gold, both of Los Angeles, Cal. (Nathan Silk, of Los Angeles, Cal., of counsel), for appellant.

Rupert B. Turnbull, of Los Angeles, Cal., for appellees.

Before RUDKIN and DIETRICH, Circuit Judges, and BEAN, District Judge.

BEAN, District Judge. This is a proceeding by the Allis-Chalmers Manufacturing Company to recover possession or impress an equitable lien on the assets of the bankrupt firm of Hollins & Arrousez Electric & Engineering Company.

For some time prior to September 22, 1926, the bankrupt had been engaged in the business of manufacturing, buying, selling, and renting electrical machines and equipment, and in the production and sale of moving pictures. On September 22, 1926, they made a general assignment for the benefit of creditors, and were adjudged bankrupts on January 24, 1927. For some time prior to the assignment they had been buying electrical machines of the petitioner, and, after making certain additions thereto, reselling them to the general public. There are six sets of such machines or appliances involved in this controversy. Five of them were sold by the petitioner to the bankrupt at divers times between December 28, 1925, and May 2, 1926, on conditional sales contracts, by the terms of which the vendor retained the title until the evidence of indebtedness given in part payment was paid in full. The other set, referred to in the record as the Cohn set, was shipped by the petitioner from its factory at Milwaukee, Wis., to the bankrupt at Los Angeles, and received by them some time prior to July, 1926.

On July 29 of that year a proposed contract for this machine, similar in terms to that covering the other machines, was offered the bankrupt by the local representative of the petitioner, and accepted by them, but it was not approved by the home office at Milwaukee. In the meantime the bankrupt, after mounting the machine on a trailer and adding other electrical equipment thereto, sold the complete machine, receiving about $19,000 therefor, which amount was deposited by them to their credit in their general banking account and used by them in the general conduct of their business prior to the making of the assignment in September of 1926. There is no evidence that any part of such amount or the proceeds thereof were in the bankrupt's estate at the time of the adjudication, or that such estate is enhanced thereby. The bankrupt, with the consent and approval of the petitioner, sold the other five sets, without having first paid the purchase price thereof, to various parties taking conditional sales contracts in their own names, similar in form to that between the petitioner and the bankrupt, receiving from the purchasers (except Cecil B. Mille Company, corporation) cash or commercial paper payable to them for the deferred payments, and the cash and the proceeds from the commercial paper, which they discounted, deposited

by the bankrupt in their general banking account, and used by them in the conduct of their business prior to September, 1926. The sale to the Cecil B. Mille Company was made in March, 1926, and the bankrupt received, as part of the purchase price, machinery or applicances of the approximate value of $6,000. The petitioner, however, permitted this machinery to remain in the possession of the bankrupt, and to be treated by them as their property, and it passed to the creditors' committee under the assignment in September, 1926. At the time of the adjudication the bankrupt was indebted in excess of $400,000 and had assets of the value of less than $100,000.

The special master and the court held that under these facts the petitioner was not entitled to any part of the assets of the bankrupt or an equitable lien thereon, and hence this appeal.

The petitioner claims that the amounts received by the bankrupt for the sale of the property in question was in the nature of a trust fund, and received for the use and benefit of the petitioner. It therefore invokes the general rule that, where property has been wrongfully obtained or applied, a court of equity will intervene to secure it to the owner, if it can be identified or traced into any other shape, by holding it to be his property or giving him a lien thereon. Central Nat. Bank v. Connecticut Mut. L. Ins. Co., 104 U. S. 56, 26 L. Ed. 693; In re Dunn & Co. (D. C.) 193 F. 212. But, assuming that the vendee of property under a conditional sales contract who sells it without the consent of the owner and before paying the purchase price, or one who wrongfully converts the property of another by selling it, receives the proceeds thereof in trust for the owner, the rule invoked by the petitioner has no application to the facts of the instant case. The five sets were sold by the bankrupt and the proceeds received and used by them as their own property, with the knowledge, consent, and approval of the petitioner, for the reason, as the agent testified, that he considered the bankrupt "then in good financial condition," and therefore did not take an assignment of the contracts from the purchasers, although the bankrupt was ready and willing to make such assignment. The petitioner therefore waived any right which it might have to, or lien on, the proceeds received by the bankrupt from the sale of the five sets, and at the time of the adjudication stood in the position of a creditor of the bankrupt for the amount remaining due on the original contract between it and the bankrupt.

It is true the agent testified that it was the understanding between him and the bankrupt at the time the sales were made that the proceeds should be held by the bankrupt for the petitioner, but this is wholly inconsistent with the acts of the parties, and, if there was such an agreement, it was clearly waived or abrogated by their subsequent conduct.

There is no evidence that any part of the money received by the bankrupt from the sale of the Cohn set, or the proceeds thereof, was a part of the assets of the bankrupt at the time of the adjudication, either in specie or in changed form. It may be that, when trust funds are wrongfully mingled by the trustee with his own, a court of equity will, for the purpose of doing justice under circumstances not here present, treat the whole as a trust fund, and intervene to protect the owner by giving him a lien on the entire fund, if the trust fund can be traced into it, but the burden of proof is upon the one claiming such a right, and, if he is unable to identify the funds as representing the proceeds of his property, his claim must fail. First Nat. Bank of Princeton v. Littlefield, 226 U. S. 110, 33 S. Ct. 78, 57 L. Ed. 145; Schuyler v. Littlefield, 232 U. S. 707, 34 S. Ct. 466, 58 L. Ed. 806; Bogert on Trust, p. 521. Such a lien cannot be impressed on property which is not shown to have been enhanced or augmented by the unlawful application. 37 C. J. 320.

Affirmed.