**VOLTZ v. PEPPAS.**

No. 4531.

District Court, N. D. Ohio, E. D.
June 22, 1933.

Cannon, Spieth, Taggart, Spring & Annat, of Cleveland, Ohio, for plaintiff.

Melville W. Vickery, of Cleveland, Ohio, for defendant.

WEST, District Judge.

Suit in equity by trustee in bankruptcy to recover a preference, in which the defendant counterclaims for $3,140. Taking up the defendant's counterclaim first: As executor of one Leras, he loaned some $5,225 to the bankrupt company of which company he was president. These moneys were turned over by him in January, March, April, August, and $100 in September, 1931, and the petition in bankruptcy was filed on February 10, 1932. These loans or advances were from funds of the estate of which the defendant was executor, and were made without any warrant or authority. The bankrupt repaid a portion of the money prior to bankruptcy, and the first question is: Does the executor have an equitable lien on the balance? I think not. The funds were not in the bankrupt's hands when the petition was filed and were not traced into property of any kind. Whether they were used to buy goods or pay off debts is unknown.

"If a court of equity can trace money or property unlawfully obtained and appropriated, into any other shape, it will intervene to secure it for the owner, by holding it to be his or by giving him a lien on it; but such a lien can not be enforced on other property which has not been enhanced or augmented by the unlawful appropriation." 37 C. J. 320; Schuyler v. Littlefield, 232 U. S. 707, 34 S. Ct. 466, 58 L. Ed. 806; Board of Commissioners of Crawford County v. Strawn, 157 F. 49, 15 L. R. A. (N. S.) 1100 (C. C. A. 6); In re Dorr (C. C. A.) 196 F. 292; Ullman v. N. Sobel (D. C.) 47 F.(2d) 612; In the Matter of Horigan Supply Co. (C. C. A.) 2 F. (2d) 791; In re Morris Bros. (C. C. A.) 293 F. 294.

Defendant cites and chiefly relies on Smith v. Township of Au Gres, 150 F. 257, 9 L. R. A. (N. S.) 876 (C. C. A. 6). The bankrupt embezzled township funds for which he gave a mortgage reciting that he had invested the moneys in his business and property. He had orally admitted having used the money "in connection with his business in paying for stock." The court say the fair inference was that the bankrupt used the public money to purchase goods and mingled them with his own stock and out of this stock sold parcels

not distinguishable in respect of the means with which they were paid. The court recognized and enforced an equitable lien of the township because there had been a mingling of the goods purchased by its money with those paid for by Smith's funds, and as the one class of goods was indistinguishable from the other, the lien was enforced on the entire stock. But that case is not authority here, for there is no satisfactory evidence in this record that the funds of the Leras estate were used by the bankrupt to buy goods which went into a stock that was on hand at bankruptcy. Nor that these advances, all but $500 of which were made in the first four months of 1931, enhanced the estate as the trustee took it at the date of bankruptcy in February of the next year. On the evidence the court finds against the defendant's counterclaim.

In support of the plaintiff's case, it appears that the bankrupt company repaid to the defendant as executor $1,360 within four months prior to the filing of the petition. The payments were made by five checks, the first of which was dated October 27, 1931, and the last January 16, 1932.

The defendant claims that the bankrupt having no title to the moneys of the estate, in view of the misappropriation by its president, the executor, the trustee can have none. But since the amendment of 1910 (Bankr. Act § 47a (2), 11 USCA § 75 (a) (2), that has not been true. Collier, p. 1647; In re Hammond (D. C.) 188 F. 1020. The trustee has the powers of a creditor holding a lien by legal or equitable proceedings, and is entitled to recover the payments if they were preferential. The court will compel the trustee to recognize equitable liens, and if these funds, when repaid by the bankrupt, were subject to such a lien, the trustee cannot recover.

The evidence shows that the funds of the Leras estate, when received by the bankrupt, were deposited in its account and used in its business. When the bankrupt so mingled these funds with its own, its entire bank account became subject to an equitable lien, and it will be presumed that withdrawals were of funds that the bankrupt could properly use. But no sum greater than the smallest balance remaining in the bank account at any time could be claimed under the lien. Central National Bank v. Conn. Mut. L. Ins. Co., 104 U. S. 54, 26 L. Ed. 693; Cunningham v. Brown, 265 U. S. 1, 12, 44 S. Ct. 424, 68 L. Ed. 873; Hewitt v. Hayes, 205 Mass. 356, 91 N. E. 332,

137 Am. St. Rep. 448; Board of Commissioners v. Strawn, supra.

On October 31, 1931, four days after the date of the first of the five checks, the amount of this check being $100, the bankrupt's bank account was overdrawn $2,513.30. I think it is fairly inferable that it was also overdrawn, to some extent at least, when said $100 check was given. So that any equitable lien which attached to the funds in the bankrupt's hands had been discharged when these repayments were made to the executor, and the funds so repaid were not trust funds or impressed with any lien, and can be recovered, provided the bankrupt was insolvent when the payments were made. I find from the evidence that it was so insolvent and that the defendant knew of such insolvency, and that the payments were preferential and should be returned.

Decree will be entered in favor of the plaintiff for $1,360 with interest, and dismissing the defendant's counterclaim, at the defendant's costs. Counsel for plaintiff will prepare findings and conclusions under Equity Rule 70½ (28 USCA § 723).