## TOMPKINS et al. v. BENDER.
### Civ. A. No. 144.

District Court, M. D. Pennsylvania.

June 28, 1941.

Edwin W. Tompkins, of Emporium, Pa., for plaintiff.

T. G. Gregory, of St. Marys, Pa., for defendant.

JOHNSON, District Judge.

This action has been submitted to the court by the parties upon the following statement of facts:

1. That H. G. Tompkins, C. W. Rishell and H. S. Spence are liquidating trustees of the Cameron County Bank, a corporate banking institution which formerly had its principal office and did business in the Borough of Emporium, Cameron County, Pennsylvania.

2. That Mark T. Bender was successor receiver of the First National Bank of Emporium, Pennsylvania, to Joshua L. Foster.

3. That the First National Bank of Emporium, Pennsylvania, suspended business on September 24, 1932, and was taken over for liquidation by the Comptroller of the Currency of the United States.

4. That on June 28, 1927, the Cameron County Bank entered into a written agreement with the First National Bank of Emporium, Pennsylvania, a copy of which is filed of record in this case, wherein the Cameron County Bank agreed to and did turn over to the First National Bank of Emporium, Pennsylvania, all of its assets to be held in trust by the First National Bank of Emporium, Pennsylvania, for the purpose of liquidation and payment of depositors of the said Cameron County Bank, the overplus, if any, to be returned to the liquidating trustees of the Cameron County Bank for the benefit of its stockholders.

5. That by the terms of said agreement the First National Bank of Emporium, Pennsylvania, was given three years within which to accomplish said liquidation, and if the First National Bank of Emporium, Pennsylvania, so desired, an additional two years within which to complete the liquidation of the said assets of the Cameron County Bank.

6. That the First National Bank of Emporium, Pennsylvania, under the terms of said agreement, elected to take the additional period of two years within which to carry out the provisions of the said trust agreement.

7. That among the assets of the Cameron County Bank which were assigned by it to the First National Bank of Emporium pursuant to said agreement was the bond of Jessie Dalton Johnson and Esther R. Johnson, dated October 25, 1926 in the sum of $5,500, and secured by a mortgage recorded in the Recorder of Deeds Office of Cameron County, Pennsylvania, in Mortgage Book Volume "G" at page 459.

8. That said bond and mortgage were assigned by the Cameron County Bank to the First National Bank of Emporium, Pennsylvania, by assignment dated July 16, 1927 and recorded in the Recorder of Deeds Office of Cameron County, Pennsylvania, in Mortgage Book Volume "F" at page 148.

9. That on September 23, 1929, the First National Bank of Emporium, Pennsylvania, as assignee of the Cameron County Bank, liquidated a judgment on a scire facias sur mortgage against Jessie Dalton Johnson and Esther R. Johnson to No. 22, October Term, 1929, in the Court of Common Pleas of Cameron County, Pennsylvania, for debt, interest, taxes and commissions in the sum of $6,530.74.

10. That on or before June 28, 1932 the First National Bank of Emporium, Pennsylvania, had liquidated sufficient assets of the Cameron County Bank to pay the depositors of the Cameron County Bank in accordance with the terms of the agreement referred to in fact No. 4.

11. That prior to June 28, 1932 the Cameron County Bank was dissolved as a corporation and has not since then resumed business.

12. That on February 2, 1932 the First National Bank of Emporium, Pennsylvania, received on account of the indebtedness represented by the said mortgage bond of Jessie Dalton Johnson and Esther R. Johnson the sum of $830.62.

13. That on March 15, 1932 the First National Bank of Emporium, Pennsylvania, received on account of the indebtedness represented by said mortgage bond of Jessie Dalton Johnson and Esther R. Johnson, the sum of $6,153.58 as payment in full of the balance of the debt, interest and costs represented by the said bond and mortgage of Jessie Dalton Johnson and Esther R. Johnson.

14. That from the $6,984.20, being the total amount received by the First National Bank of Emporium on the said bond and mortgage, certain items of expense were deducted therefrom in the sum of $339.39, leaving to remain the sum of $6,-644.81 to be accounted for by the First National Bank of Emporium, Pennsylvania, to the liquidating trustees of the Cameron County Bank pursuant to the terms of the contract referred to in fact No. 4.

15. That the First National Bank of Emporium, Pennsylvania, received payment of said items of $830.62 and $6,153.58 by two checks dated February 2, 1932 and March 15, 1932, respectively.

16. That said checks were forwarded by the First National Bank of Emporium, Pennsylvania, to the Philadelphia National Bank, Philadelphia, Pennsylvania, for collection.

17. That the Philadelphia National Bank, Philadelphia, Pennsylvania, upon collection of the said checks gave the First National Bank of Emporium, Pennsylvania, credit therefor in an account carried by the First National Bank of Emporium, Pennsylvania, with the Philadelphia National Bank.

18. That thereupon the First National Bank of Emporium, Pennsylvania, set up an account in the general ledger of its commercial department identified as "Cameron County Bank Special" showing a balance therein of $6,644.81, after the deduction of the items of expenses in the amount of $339.39 heretofore mentioned.

19. That following the collection of said two checks for $830.62 and $6,153.58 by the Philadelphia National Bank no part of the proceeds thereof in any form whatsoever were ever transferred by the Philadelphia National Bank to the First National Bank of Emporium, Pennsylvania, or any of its receivers.

20. That following the collection of the said checks by the Philadelphia National

Bank all of the funds in the account of the First National Bank of Emporium, Pennsylvania, with the Philadelphia National Bank were exhausted by the payment by the Philadelphia National Bank of drafts drawn by the First National Bank of Emporium, Pennsylvania.

21. That following the collection of the said checks by the Philadelphia National Bank no part of the proceeds thereof in any form whatsoever ever came into and among the physical assets of the First National Bank of Emporium, Pennsylvania, or the receivers thereof.

22. That neither the First National Bank of Emporium, Pennsylvania, nor the receivers thereof, after demand upon them, have paid any part of the said sum of $6,644.81 to the liquidating trustees of the Cameron County Bank.

The above facts are hereby adopted as the findings of fact of this court.

From the above findings of fact the court reaches the following conclusions of law:

1. A trust relationship existed between the plaintiff and the defendant bank.

2. The assets of the defendant bank were augmented by the receipt of a bond and mortgage.

3. The plaintiff has failed to trace the proceeds of this bond and mortgage into assets of the defendant coming into the hands of the receiver of defendant bank.

4. Plaintiff is entitled to a judgment in its favor and against the defendant for $6,644.81, the defendant to recognize the same as a general claim only.

5. The costs of this suit shall be placed upon the plaintiff.

The National Bank Act, 12 U.S.C.A. § 194, requires that, except for preferences to the United States for the redemption of circulating notes, the payment of certified checks given to the United States for custom duties and collection of certain taxes as described in 19 U.S.C.A. § 198 and 26 U.S.C.A. Int.Rev.Code, § 3656(a), the assets of an insolvent national bank shall be distributed ratably.

In order to impress a trust upon the assets of a national bank in the hands of a receiver the claimant has the burden of proving (1) that the bank received the property of the claimant in trust; (2) that the property so received actually augmented the existing assets of the bank by way of adding thereto cash or other property; and (3) that the augmented assets or proceeds thereof are traceable into the assets coming into the receiver's hands. Blakey v. Brinson, 286 U.S. 254, 52 S.Ct. 516, 76 L.Ed. 1089, 82 A.L.R. 1288; Empire State Surety Co. v. Carroll County, 8 Cir., 194 F. 593; Hirning v. Federal Reserve Bank, 8 Cir., 52 F.2d 382, 82 A. L.R. 297; Mechanics & Metals Nat. Bank v. Buchanan, 8 Cir., 12 F.2d 891, certiorari denied 273 U.S. 715, 47 S.Ct. 108, 71 L.Ed. 855; Larabee Flour Mills v. First National Bank, 8 Cir., 13 F.2d 330, certiorari denied 273 U.S. 727, 47 S.Ct. 238, 71 L.Ed. 861; Hoffman v. Rauch, 300 U.S. 255, 57 S.Ct. 446, 81 L.Ed. 629; Schuyler v. Littlefield, 232 U.S. 707, 713, 34 S.Ct. 466, 58 L.Ed. 806; Texas & Pacific Ry. Co. v. Pottorff, 291 U.S. 245, 261, 54 S.Ct. 416, 78 L.Ed. 777; First National Bank v. Williams, D.C., 15 F.2d 585; Quin v. Earle, C. C., 95 F. 728, 731; Knatchbull v. Hallett, 13 Ch.Div. 696.

Defendant here admits the existence of a trust relationship, and further admits that the assets of the defendant bank were originally augmented by the receipt of the bond and mortgage in question, but defendant denies that the bond and mortgage or the proceeds thereof can be traced into assets coming into the receiver's hands.

There is no doubt plaintiff can trace the bond and mortgage through its conversion into the two checks referred to in fact No. 15. Those checks can then be traced into the account which defendant bank maintained in the Philadelphia National Bank. But on the facts submitted, plaintiff has failed to trace the proceeds of those checks from the account in the Philadelphia National Bank into the receiver's hands. Facts Nos. 17, 19, 20 and 21 show that the account in the Philadelphia bank was entirely exhausted by other drafts drawn by defendant, and that no part of the proceeds of the checks ever came into the hands of the bank or its receiver or among the physical assets of the defendant bank. Schuyler v. Littlefield, 232 U.S. 707, 34 S.Ct. 466, 58 L.Ed. 806; Titlow v. McCormick, 9 Cir., 236 F. 209. Although there is no proof of it, even if the court assumes that at all times after the collection referred to in fact No. 17, defendant bank had cash on hand at least equal to the sum of the items collected by its correspondent bank, plaintiff still has not traced sufficiently, for there is no presumption that the collections ever went into such cash fund. Titlow v. McCormick, supra.

Also, assuming that by virtue of fact No. 18, plaintiff has traced the proceeds of the collection into the special account and the credit item therein set up by the defendant bank, plaintiff still has not traced the fund sufficiently, because plaintiff would at best be entitled to impress a trust against the lowest cash balance in defendant bank between the date referred to in fact No. 18 and the time the bank was closed. MacDonald v. Guy, 1 Cir., 63 F.2d 334, 337, and cases there cited. In the first place the specific date is not shown to the court in fact No. 18, and in the second place there is no evidence at all concerning the balance of cash maintained by defendant bank between that time and the time defendant bank was closed. Plaintiff has therefore failed to meet its burden of proof to trace proceeds of the trust fund into the receiver's hands.

It is hereby noted of record that counsel for the plaintiffs has not filed a brief as he agreed to do, and he has not filed a brief as requested by this court, although given a liberal extension of time.

For the foregoing reasons, and in accordance with stipulation of counsel, the court hereby renders judgment for $6,644.81 in favor of plaintiffs and against the defendant, and directs the defendant to recognize the same as a general claim only, and the costs of this suit are hereby placed upon the plaintiff.