**In re TEXAS COMMERCE TRUST COMPANY, Debtor.**

**BURROW, JONES, ROWTON, CATES & REPPETO, a Professional Corporation, Plaintiff,**

v.

**TEXAS COMMERCE TRUST COMPANY, Defendant.**

**Bankruptcy No. 381–00741–F.**
**Adv. No. 381–0653.**

United States Bankruptcy Court,
N. D. Texas,
Dallas Division.

Jan. 19, 1982.

738

James Berry, Dallas, Tex., for Burrow, Jones, Rowton, Cates & Reppeto.

Thomas J. Mahaffey, Dallas, Tex., for Texas Commerce Trust Co.

## OPINION AND MEMORANDUM OF LAW

JOHN C. FORD, Bankruptcy Judge.

This is an adversary proceeding brought by the law firm of Burrow, Jones, Rowton, Cates & Reppeto to terminate the automatic stay in effect since the filing of the Chapter 11 petition by the Debtor on May 22, 1981. The plaintiff, ("Burrow"), is a professional corporation composed of attorneys licensed to practice law before the courts of the State of Texas and admitted to practice law before the courts of the Northern District of Texas. Texas Commerce Trust Company, ("TCTC"), the debtor herein and a chartered trust company, derives its income from management fees charged for servicing common trust funds. This proceeding concerns the Texas Commerce Trust Company Short Term Trust for Qualified Employee Benefit Plans, ("E-Fund"), and TCTC in its representative capacity as trustee of the E-Fund.

Burrow is allegedly owed $34,088.16 in legal fees by either TCTC or the E-Fund. Burrow filed this adversary proceeding on September 3, 1981, with the intent of having the automatic stay lifted as per the E-Fund. If the stay was lifted Burrow could then seek collection of the legal fees in a court of competent jurisdiction.

After careful analysis of the pleadings on file and the testimony presented in this case, this Court holds that the relief sought by Burrow must be denied upon both equitable and legal grounds.

## DISCUSSION

■ Lifting the stay would sever the trust relationship between TCTC and the E-Fund. The resultant loss to the debtor would be fatal as reflected in testimony by the president of TCTC which revealed that 95% of the trust fund assets serviced by TCTC belong to the E-Fund. Stripping the E-Fund assets from the jurisdiction of this Court would therefore gut the debtor and nullify any serious efforts to reorganize the debtor.

Lifting the stay would also result in a race to the courthouse whereby only the swiftest and most diligent contestants will cart away the remains of the E-Fund. Even if this debtor is not capable of a successful reorganization, the beneficiaries and creditors of the E-Fund will remain under the protection of this Court. In contrast, cutting loose the trust assets will result in a chaotic dissolution of the trust assets. The protection and eventual distribution of these trust assets are of utmost concern to this Court. On these and other equitable grounds the relief sought by Burrow must be denied.

In addition, the complaint to lift the stay must be denied as a matter of law. TCTC filed its Chapter 11 petition on May 22, 1981. As is the case with many debtors, the records of TCTC were in disarray at the time the petition was filed. Serious allegations have been made alleging commingling of trust funds and participation by the trustee in questionable transactions. In an effort to stem further breaches in the fiduciary relationship, this Court ordered the installation of new officers in TCTC and the appointment of special creditor committees and an examiner immediately after the commencement of this case. Accountants under the supervision of the examiner have been working long hours to unravel the chaotic financial records of the debtor and to reconcile the various trust fund accounts. It is impossible at this time to determine exactly what assets belong to the E-Fund. Even if this Court lifted the stay it would be the burden of the claimant to sufficiently trace and identify the trust assets. See *Schuyler v. Littlefield*, 232 U.S. 707, 34 S.Ct. 466, 58 L.Ed. 806 (1914) and cases cited in 4 *Colliers on Bankruptcy* (15th ed. 1979) ¶ 541.13, p. 541–67, note 3. No evidence has been presented by the plaintiff to establish which assets belong to the E-Fund. The plaintiff has therefore failed to carry his burden of proof.

This case is unique. The debtor is a chartered trust company deriving almost all its income from servicing fees. The plaintiff law firm provided pre-petition legal services to the debtor. It is uncontroverted that at least some of the legal services involved legal questions relating solely to the E-Fund. Burrow contends, however, that all the legal fees, amounting to $34,088.16, were incurred solely for the benefit of the E-Fund. Burrow wants payment for those fees to come solely from the E-Fund. Evidence presented at the hearing on October 30, 1981, indicated that all the bills for legal work allegedly performed by Burrow for the E-Fund were presented for payment to TCTC. It appears that no effort was ever made to bill the E-Fund directly until after the Chapter 11 petition was filed by TCTC. It should be noted, however, that some of the pre-petition bills for legal fees were paid to Burrow, and the E-Fund account was sometimes debited in concert with those payments. The E-Fund does not exist as a separate entity with its own officers and employees. Whenever Burrow was retained to perform legal work for the E-Fund it was always the officers of TCTC who actually contacted Burrow. This Court concludes that Burrow should look for payment of these fees to TCTC, as it has done in the past.

Burrow contends that payment of the legal fees is an obligation incurred by the E-Fund. As long as the E-Fund remains under the jurisdiction of this Court, Burrow cannot reach the assets of the E-Fund to satisfy the debt of $34,088.16. The effort to lift the stay is an attempt, therefore, by Burrow, to take the E-Fund assets outside the jurisdiction of this Court. It is the conclusion of this Court that Burrow has no standing as a matter of law to seek the removal of the E-Fund assets from the jurisdiction of this Court.

In order for Burrow to have standing to seek removal of the E-Fund assets, he must first prove that he is a beneficiary of the E-Fund. TCTC, by its own admission, holds no beneficial or equitable title to the E-Fund assets. TCTC does, however, hold legal title to the E-Fund assets as evidenced by the trust documents presented at the October 30, 1981, hearing. Pursuant to 11 U.S.C. § 541(d), the estate created by the

commencement of a case under 11 U.S.C. § 301 includes property in which the debtor holds only bare legal title. There can be no serious question that the E-Fund assets are not part of the debtor's estate. Of course, a debtor holding mere legal title to assets does not acquire any beneficial interest solely as a result of the commencement of the case. Under the Bankruptcy Act, when it appeared that the debtor was a trustee holding bare legal title to trust assets, courts generally held that the debtor should turn the property over to its true owners where possible. See *Todd v. Pettit*, 108 F.2d 139 (5th Cir. 1939); *In the Matter of Georgian Villa, Inc.*, —— C.B.C.2d ——, —— B.C.D. ——, 10 B.R. 79 (Bkrtcy., N.D.Ga. 1981); *4 Colliers on Bankruptcy*, (15th Ed. 1979) ¶ 541.13, p. 541–67. In *Todd*, supra, at 140, the Fifth Circuit affirmed the decision of the United States District Court for the Northern District of Texas, the Honorable James C. Wilson presiding, dismissing the bankruptcy trustee's suit to collect monetary assets arising out of trusts administered in the bankruptcy of Harry Elliott. Although the Fifth Circuit affirmed the lower court ruling that the bankruptcy trustee lacked standing to seek the turnover of trust assets wrongfully held by the debtor, they went on to say that two already appointed state receivers were the proper parties to seek the turnover of trust assets still held by Elliott. It should be noted that the trust assets were in the form of certificates evidencing unit ownership in oil properties. The Debtor Elliott held bare legal title to the trust assets. Moreover, the Court emphasized the fact that the unit certificate holders were equitable owners of the trust properties, not creditors of Elliott. *Todd*, supra, at 140. In practical terms, the bankruptcy trustee in *Todd* sought the turnover of trust assets in order to enlarge the bankruptcy estate available to pay creditors of the debtor Elliott. Had the bankruptcy estate been blessed with the addition of the trust assets wrongfully held by Elliott then all the creditors of Elliott would have received some small part of any eventual distribution from the trust assets. Although some of the equitable owners of the trust assets may have also been creditors of Elliott, not all creditors of Elliott were likely to be equitable owners of the trust assets. Allowing participation by both creditors and equitable owners in a distribution of assets would be to the detriment of the equitable owners. By affirming the lower court decision, the Fifth Circuit wisely assured the equitable owners of the trust assets that only they would receive any eventual distribution of trust assets still held by the debtor. In the case at bar, no evidence has been presented by Burrow establishing a beneficial or equitable interest in the E-Fund assets. Having established no equitable interest, Burrow is to be considered nothing more than an unsecured creditor holding a claim for pre-petition legal fees. By analogy to the bankruptcy trustee in the *Todd* case, Burrow has no standing to seek the turnover of trust assets in payment of his unsecured creditor claim.

■ Under the Bankruptcy Code, the estate created at the commencement of a case is vested with all the rights that the debtor may have as a trustee, including the rights to servicing fees. See *Colliers*, supra, at p. 541–67. Barring an abandonment of the trust assets pursuant to 11 U.S.C. § 554, there is an implication in the Code that a debtor may retain its role as trustee assuming this is in the best interest of the beneficial owners of the trust assets. In the case at bar, the Court has maintained a careful and close watch over the attempt to reorganize TCTC. It appears to be in the best interest of the beneficiaries of the E-Fund assets to maintain the E-Fund assets within the jurisdiction of this Court. The committee representing the beneficial owners of the E-Fund assets appear satisfied with the current arrangement. They have even voiced their objection to lifting the stay. This Court finds, therefore, that it is within the best interest of the beneficial owners of the trust assets to continue the stay in full force and effect.

Burrow is not left without a remedy. Burrow can, if it wishes, file an unsecured claim with the clerk of this Court. Once a

plan is filed and confirmed, Burrow may possibly receive a dividend along with other unsecured creditors.

The Order signed by this Court on November 9, 1981, stands. The complaint to lift the automatic stay is denied. The stay is to continue in full force and effect.